2024 IL App (4th) 230757

NO. 4-23-0757

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 23, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| SNOWSTAR CORPORATION, an Iowa Corporation, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Rock Island County |
| A&A AIR CONDITIONING & REFRIGERATION | ) | No. 17L143 |
| SERVICE, INC., an Illinois Corporation, | ) | |
|     Defendant-Appellant. | ) | Honorable |
| | ) | James G. Conway Jr., |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court, with opinion.
Justices Harris and Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1      Defendant, A&A Air Conditioning & Refrigeration Service, Inc. (A&A), appeals from a jury verdict entered in favor of plaintiff, Snowstar Corporation (Snowstar). On appeal, A&A presents six issues for review. A&A asserts the trial court abused its discretion when it (1) denied its motions *in limine* as untimely filed, (2) refused to allow A&A to call certain witnesses, (3) admitted opinion evidence regarding Snowstar's alleged real and personal property damages that was not properly disclosed, (4) allowed improper cross-examination of certain A&A witnesses, and (5) erroneously admitted certain evidence related to A&A's liability. Finally, A&A argues the cumulative effect of these errors warrants a new trial. Snowstar responds A&A has forfeited several of these issues by failing to preserve them at trial. Snowstar further contends no errors occurred and the judgment should be affirmed. We affirm.

¶ 2                              I. BACKGROUND

¶ 3                              A. Complaint and Answer

¶ 4        Snowstar operates a winter ski park in Andalusia, Illinois, which includes a lodge facility with a kitchen. A&A is in the business of leasing, servicing, and repairing ice makers. In December 2015, A&A serviced an ice maker it leased to Snowstar. In January 2016, a fire occurred at Snowstar that resulted in damage to Snowstar's real and personal property. In December 2017, Snowstar filed a two-count complaint against A&A for negligence (count I) and strict product liability (count II).

¶ 5        In count I of its complaint, Snowstar alleged A&A (1) leased to Snowstar an ice maker containing a faulty cord or plug, (2) improperly serviced said ice maker, and (3) failed to inform Snowstar of the risk of fire in using the ice maker, which was a risk that A&A knew or should have known when it leased the ice maker to Snowstar. Further, Snowstar asserted the January 2016 fire was proximately caused by these acts and omissions, resulting in damage to Snowstar's real and personal property and lost revenue.

¶ 6        In count II, Snowstar alleged at the time A&A leased the ice maker to Snowstar, its electrical cord or plug was not safe for its reasonably foreseeable use in that, unbeknownst to the user, the electrical cord or plug was susceptible to high resistance heating, thereby rendering it unreasonably dangerous. As a result of this allegedly unreasonably dangerous condition, Snowstar suffered the previously mentioned damages following the January 2016 fire.

¶ 7        In January 2018, A&A filed an answer and affirmative defenses. A&A denied any knowledge of fire risk due to a faulty cord or plug in the ice maker it leased to A&A and generally denied Snowstar's claims of negligence and strict product liability. A&A raised affirmative

defenses of (1) innocent seller, (2) Snowstar's contributory negligence, (3) no joint and several liability, (4) statute of limitations and repose, and (5) misuse of product.

¶ 8                                    B. Pretrial Matters

¶ 9                                    1. *Witness Disclosures*

¶ 10          On April 16, 2018, A&A answered Snowstar's initial written interrogatories and disclosed any expert witness identified by plaintiff. On February 9, 2019, Snowstar disclosed Kerry Smith as a controlled expert witness under Illinois Supreme Court Rule 213(f)(3) (eff. Jan. 1, 2018), to offer opinions on the value of Snowstar's business loss. During his January 2020 discovery deposition, Smith opined Snowstar sustained lost revenue of $265,690.00 because of the fire and smoke damage. In September 2021, Snowstar moved to reopen expert discovery on the basis that certain damages experts, including Smith, were no longer available to testify at trial. Over A&A's objection, the trial court extended Snowstar's deadline to disclose new expert witnesses. On May 4, 2022, Snowstar disclosed two new experts, James Engel and Brian Crotty, who would provide opinion testimony on the issue of damages. A&A issued a trial subpoena to Smith on October 19, 2022, and listed him on its trial witness list. On October 27, 2022, Snowstar moved to strike Smith from A&A's witness list, asserting his opinions lacked probative value, any probative value was outweighed by the danger of unfair prejudice to Snowstar, and his testimony would unfairly surprise Snowstar. The court denied the motion to strike.

¶ 11          Snowstar also disclosed Kevin Hextell, a claims adjuster with RAC Adjustments, Inc., as an independent expert witness under Illinois Supreme Court Rule 213(f)(2) (eff. Jan. 1, 2018). Hextell was present during the joint study conducted by Donan Engineering in Andalusia, Illinois, on February 1, 2016, following the fire. A&A disclosed that it may call any person

identified by Snowstar pursuant to Rule 213(f)(2). Prior to trial, A&A identified Hextell on its witness list and issued a subpoena to him on November 3, 2022.

¶ 12                                     2. *Motions* in Limine

¶ 13          The trial court set the final pretrial conference for October 28, 2022. A&A served its motions *in limine* Nos. 1 through 47 upon Snowstar's counsel on October 21, 2022, and filed the same on October 24, 2022. At the October 28, 2022, pretrial conference, Snowstar orally moved to strike A&A's motions *in limine* Nos. 40 to 47 on the basis they sought summary judgment. On November 3, 2022, Snowstar filed a supplemental resistance in support of its previous oral motion to strike A&A's motions *in limine* Nos. 40 to 47, asserting they improperly sought dispositive relief rather than rulings on evidentiary matters. On November 7, 2022, A&A filed a notice indicating it e-mailed a written reply to Snowstar's supplemental resistance, but at the subsequent pretrial conference on November 9, 2022, the court denied receiving the reply. The court granted Snowstar's motion to strike, concluding, "The timing of A&A's filings has provided Snowstar one court day to resist something from which Snowstar should have been permitted weeks to resist in the form of a summary judgment motion," and it described A&A's tactic as "unfair and prejudicial." However, the court then stated it would also make substantive rulings in the alternative and allowed A&A to argue each individual motion *in limine*. Thereafter, the court also denied A&A's motions *in limine* Nos. 40 to 47 on the merits.

¶ 14                                     C. Jury Trial

¶ 15          The trial court conducted a jury trial in this case over six days from November 14, 2022, to November 21, 2022. A summary of the trial evidence relevant to the issues presented on appeal follows.

¶ 16                                 1. *Plaintiff's Case-in-Chief*

¶ 17                                    a. Snowstar's Owners

¶ 18          James Bowman and Dr. Thomas Rexroth, whom Snowstar had previously disclosed as fact witnesses under Rule 213(f)(1) testified they had ownership interests in Snowstar at the time of the fire.

¶ 19          Immediately prior to Bowman's testimony, defense counsel renewed A&A's motion *in limine* No. 42, which sought to bar any opinion testimony from Bowman regarding alleged damages to Snowstar's real and personal property. On direct examination, Bowman was asked if, as an owner and treasurer of the corporation, he had a general understanding of what value he would have put on the lodge and its equipment before the fire. A&A objected to "foundation," which the trial court overruled on the grounds it properly called for a lay opinion. When Snowstar asked Bowman about the value of the lodge after the fire, A&A again objected to "foundation." The court overruled the objection on the basis it called for a lay opinion.

¶ 20          Over A&A's objection, Bowman testified prior to the fire, the lodge, its equipment, and its contents were worth $550,000, and that after the fire, they were worth "zero." Bowman also testified it was reasonable to spend $272,000 to repair the lodge and equipment.

¶ 21          Dr. Rexroth also testified for Snowstar. On direct examination, before Snowstar began a line of questioning regarding the value of the lodge, A&A asked for a standing objection "to foundation." The trial court noted the standing objection and overruled it. Rexroth testified the lodge was worth $650,000 and Snowstar repaired it to its pre-fire value.

¶ 22                                    b. Damages Experts

¶ 23          Prior to testimony from Snowstar's experts Engel and Crotty, A&A filed motions *in limine* Nos. 44 to 47 to bar them from offering opinion evidence regarding the fair market value

of Snowstar's real or personal property and financial losses resulting from the fire. A&A asserted those opinions were speculative and lacking in proper foundation.

¶ 24 During Engel's testimony, Snowstar's counsel directed his attention to defendant's exhibit No. 59, the report Engel authored in preparation for this case. After opening statements and prior to plaintiff's presentation of evidence, the parties requested the trial court admit certain exhibits to which neither party objected. Upon the introduction of defendant's exhibit No. 59, the following colloquy ensued:

> "THE COURT: Another listening [*sic*] of material reviewed by purported expert Engel. And it's nicely assembled with its own four internal exhibits, constituting 17-page, 17-page group exhibit. And is this to be admitted without objection?
>
> [DEFENSE ATTORNEY]: Without objection, Your Honor.
>
> THE COURT: Defendant 59 admitted without objection."

During direct examination, when Engel was asked about his statement in the report that Snowstar's five-year total lost income was $2,156,926, A&A objected due to a lack of foundation, which the trial court overruled. The court also overruled A&A's standing objection to this line of testimony based on lack of foundation.

¶ 25 During Crotty's testimony, Snowstar moved to admit into evidence defendant's exhibit No. 63, the report Crotty authored in preparation for this case. A&A objected based on lack of foundation, noting it had marked that document for identification only and did not intend to admit it into evidence. The trial court admitted the report over A&A's standing objection due to a lack of foundation.

¶ 26 c. Engineering Expert

¶ 27 Gary Woodall testified for Snowstar as an engineering expert. Prior to trial, the trial court denied A&A's motion *in limine* No. 40, which sought to bar Woodall from offering opinion testimony on the standard of care for service technicians on the basis he had no experience as a service technician. Prior to Woodall's trial testimony, A&A renewed the motion, which the court again denied.

¶ 28 Woodall testified he was an electrical engineer employed with Donan Engineering, where he performed fire investigations. During Woodall's trial testimony, A&A objected to Woodall offering an opinion on what techniques A&A technicians "could have used" when servicing ice machines, cords, and plugs, asserting the opinion lacked foundation. The trial court overruled the objection. Woodall opined that A&A's service technicians could check for whether electricity was passing through an improperly assembled electrical component and generating heat by manually grabbing the machine's plug after the test of three or four ice drops to feel if the plug was hot.

¶ 29 Prior to trial, the trial court had also reserved a ruling on A&A's motion *in limine* No. 36, which sought to exclude any evidence regarding its "lack" of a local license to perform service or technical work in Andalusia, Illinois, because such a license was not required in Illinois. On cross-examination, A&A asked Woodall if any special certifications or licenses were needed to hook up a power cord in Illinois. Woodall responded, "No license, but some exposure and training with electrical products." During a sidebar, Snowstar asserted that because A&A "opened the door" to this line of questioning, it should be permitted to pursue a similar line of questioning with A&A's witnesses. The court agreed and ruled Snowstar would be permitted to cross-examine A&A's witnesses on the licensing issue, noting the issue was "a matter that is essentially pretty unimportant."

¶ 30     At the close of Snowstar's case-in-chief, A&A moved for a directed verdict, which the trial court denied.

¶ 31                         2. *Defendant's Case*

¶ 32                         a. A&A Representatives

¶ 33     George Pokrajac testified he was the president of A&A. Prior to trial, the trial court reserved a ruling on A&A's motion *in limine* No. 35, which sought to bar admission of the document identified as "Manitowoc Parts & Service Communicator, Subject: Manitowoc Data Plate—Serial Number Change and Manufactured Date Code Location" and "Manitowoc Ice Machine Serial Numbers, (dated March 20, 2015)." A&A asserted the document lacked the necessary foundation for admission into evidence pursuant to Illinois Rule of Evidence 901 (eff. Sep. 17, 2019).

¶ 34     At trial, Pokrajac testified the Manitowoc ice machine containing the allegedly faulty cord or plug was manufactured in 1995 based upon the serial number on the machine, which was "951463441." In his experience, the first two numbers in the serial number indicated the year the machine was manufactured. He further testified the machine was purchased by A&A in 1995 from Rogers Supply and that A&A installed the power cord and plug on every machine it purchased that was not "hardwired." According to Pokrajac, the power cord and plug were installed in 1995 and had never been replaced. The machine was installed on the Snowstar property in 2013.

¶ 35     On cross-examination, Snowstar questioned Pokrajac about plaintiff's exhibit No. 65, which was the document A&A sought to exclude in its motion *in limine* No. 35. A&A renewed its foundation objection, which the trial court overruled. The court admitted the exhibit and allowed Snowstar's counsel to cross-examine Pokrajac with respect to the document, dated September 9, 2006, and concerning changes to Manitowoc ice machine serial numbers. The top of

the exhibit states as follows: "The following information refers to all Manitowoc current production. The new serial numbers are sequential and do not indicate year and month of manufacture. A manufacturing date has been added to the model serial date. The year is listed first, followed by the month." Under this information are two examples of Manitowoc's new manufacturing labels. In the examples, the manufacturing date is listed separately from the serial number, with neither serial number providing manufacturing date information. Pokrajac agreed that the serial number on the ice machine at issue did not follow a two-digit year, two-digit month sequence in its first four digits, because the second two digits were "14," and there is no fourteenth calendar month. Also on cross-examination, Snowstar elicited Pokrajac's admission A&A's technicians were not licensed electricians. A&A did not object.

¶ 36    In addition, Wade Wilcox, an A&A technician, testified at trial. On cross-examination, Wilcox agreed he did not hold any license to perform electrical or plumbing work. Again, A&A did not object.

¶ 37                                  b. Kerry Smith

¶ 38    A&A called Smith to testify, and Snowstar renewed its objection to his testimony. Snowstar specifically objected that Smith's testimony was inadmissible hearsay and irrelevant, and it was improper for defense counsel's office to contact Smith and provide materials to him. During *voir dire*, Smith testified counsel for A&A provided him with documents that appeared to be the materials he reviewed and relied on for his prior analysis in this case. However, Smith also testified during *voir dire* he had not been involved in nor had he reviewed any information related to Snowstar or its losses since the date he had issued his report five years prior to trial and had no opinions concerning Snowstar's continuing losses over the next five years.

¶ 39     A&A then moved for admission of Smith's report (defendant's exhibit No. 54), which contained his opinion that Snowstar sustained lost revenue of $265,690. The trial court denied admission of the exhibit, finding it would result in unfair prejudice to Snowstar. The court ruled A&A could not elicit Smith's opinion testimony and A&A had improper *ex parte* contact with Smith. Accordingly, the court excused Smith from the trial. A&A's counsel did not submit an offer of proof as to what Smith's testimony would be if he had been permitted to testify.

¶ 40                                    c. Kevin Hextell

¶ 41     At trial, A&A advised that it intended to call Hextell to identify photographs he took of the loss scene and provide his opinion concerning the costs of repairs. Hextell also participated in the adjustment of the loss for Snowstar, which included the calculation of the reasonable costs of repairs. On Snowstar's motion, the trial court limited Hextell's testimony to the identification of photographs and ruled he would not be allowed to discuss his repair estimates. Specifically, the court determined that because Hextell worked for an insurance adjustment firm, there was no way to effectively cross-examine his opinion evidence as to the value of certain repairs without explaining he worked for an insurance company. Accordingly, the court barred such evidence, and Hextell's testimony was limited to the identification of photographs. After the jury was excused, A&A made an offer of proof that, if allowed, Hextell would have testified that he calculated the value of the damaged property immediately prior to the fire at $160,551.97. Hextell also would have testified that Snowstar hired another company to value the loss, Werner Restoration Services, whose estimate was less than Hextell's.

¶ 42                                    d. Gary Hong

¶ 43     Gary Hong testified as A&A's expert under Rule 213(f)(3). Prior to Hong's testimony, Snowstar requested the trial court allow it to question Hong regarding the deposition of

Snowstar employee Anthony Fairchild, who did not testify at trial. According to Snowstar, Hong had reviewed Fairchild's deposition and had taken some notes.

¶ 44  Prior to trial, the trial court had reserved a ruling on A&A's motion *in limine* No. 39(c), which sought to bar testimony from Fairchild that on the day of the fire, he overheard a conversation between Dan McCanna, or one of the owners, and some unidentified person, who said the ice machine cord was "faulty." In his deposition, Fairchild did not identify the person who allegedly made the statements. A&A sought to bar this evidence on the basis it lacked a proper foundation and constituted inadmissible hearsay. Fairchild also suggested in his deposition that employees had moved the ice machine at one point to paint the wall behind it.

¶ 45  On direct examination, A&A did not directly ask Hong any questions about Fairchild's statements. However, when Hong was asked about which depositions he reviewed in preparation for his testimony in this case, Hong responded that he reviewed Fairchild's. Hong opined there was not enough evidence to connect the fire to the ice maker's plug or cord and instead suggested two other causes. Furthermore, A&A's counsel also asked Hong whether "it [was] possible to know how the ice machine was moved by Snowstar employees who did painting in the kitchen sometime before the fire?"

¶ 46  On cross-examination, A&A made a standing objection to testimony regarding Fairchild's statements, which the trial court overruled. Snowstar's counsel had Hong read into the record notes he took from Fairchild's deposition, which included the following:

"[Fairchild] states that he was there when somebody installed the cord on the day of the fire."

"[Fairchild] heard a guy saying that it was a faulty cord and can cause fires, talking to Dan McCanna."

- 11 -

"[Fairchild] looked into the lodge and saw fire where the cord connects to the machine." During deliberations, the jury requested Fairchild's deposition, and after a consultation with counsel, the trial court denied the request.

¶ 47                    D. Jury Verdict and Posttrial Motions

¶ 48        At the close of evidence, A&A renewed its motion for a directed verdict, which the trial court denied.

¶ 49        During the jury instructions conference, the parties disagreed on the verdict forms to be provided to the jury. Snowstar proposed using special interrogatories differentiating between different legal theories for which it could find A&A liable, which the trial court summarized as follows:

>    "Question 1 wants a finding of liability for negligence. Question 2 wants a finding of liability strictly liable, defective product. Question 3 wants an amount of damages.
>
>    Then comes question 4, has defendant met its burden of proof in proving that Snowstar was negligent in the operation of the ice maker, its cord, or its plug? Yes or no. If you answered no, do not answer question 5.
>
>    Question 5, has A&A met its burden of proof in proving that Snowstar's negligence was a proximate cause of Snowstar's damages, yes or no. If no, do not answer question 6.
>
>    Question 6, using 100 percent as the total combined fault, plaintiff/defendant, what percentage of such complying fault do you assign the plaintiff and what percentage do you assign to the defendant? Answer plaintiff Snowstar, blank. Defendant A&A, blank. If you find A&A to have 50 percent or

- 12 -

more of the fault, then Snowstar is entitled to recover damages on their negligence claim. If you find Snowstar to be more than 50 percent at fault, then Snowstar may not recover damages on its negligen[ce] claim."

¶ 50 A&A objected to the use of these interrogatories, arguing they would confuse the jury, and instead proposed using Illinois Pattern Jury Instructions, Civil, Nos. B45.01.A, B45.01.B, and B45.01.C (2000). A&A's proposed verdict forms did not differentiate between different theories of liability. The trial court agreed with A&A, and the jury was provided the aforementioned three forms.

¶ 51 Following deliberations, the jury returned a verdict in favor of Snowstar. The jury found Snowstar incurred $1,515,252 in damages and attributed 10% contributory negligence to Snowstar, reducing its total recoverable damages to $1,363,762.80.

¶ 52 A&A timely filed a posttrial motion on March 2, 2023. In its motion, A&A requested a new trial, entry of an order granting a remittitur, or a judgment notwithstanding the verdict. A&A asserted it was entitled to the aforementioned relief on substantially the same grounds argued in this appeal. The parties agreed to oral argument on July 10, 2023, before the trial judge, Judge James G. Conway Jr. In July 2023, the trial court vacated the oral argument date, advising that the "Parties may contact Judge directly to reset if oral argument becomes necessary." In August 2023, the court entered a written order denying A&A's motion, which was mailed to the parties.

¶ 53 This appeal followed.

¶ 54 II. ANALYSIS

¶ 55 A&A presents six primary issues on appeal, asserting it is entitled to a new trial because the individual and cumulative effect of these alleged errors deprived it of a fair trial.

Snowstar responds each of A&A's challenges is either forfeited, waived, or did not constitute an abuse of discretion. Snowstar further argues none of the alleged errors, if proven individually or cumulatively, would entitle A&A to a new trial.

¶ 56                                                    A. Standard of Review

¶ 57          The parties agree that all the issues A&A raises on appeal are evidentiary matters, which this court reviews for an abuse of discretion. See *Pister v. Matrix Service Industry Contractors, Inc.*, 2013 IL App (4th) 120781, ¶ 55. "The court abuses its discretion when its rulings are 'arbitrary, fanciful or unreasonable, or where no reasonable person would take the view adopted by the court.' " *Id.* (quoting *Auten v. Franklin*, 404 Ill. App. 3d 1130, 1151 (2010)). Generally, "[a]n error in the admission or exclusion of evidence will not constitute reversible error unless one party has been prejudiced or the proceedings have been materially affected." *Id.* ¶ 56 (citing *Wilson v. Humana Hospital*, 399 Ill. App. 3d 751, 758 (2010)).

¶ 58          Additionally, while no litigant may be assured a *perfect* trial, "a litigant must not be denied a *fair* trial." (Emphasis added.) *Andes v. Lauer*, 80 Ill. App. 3d 411, 416 (1980). "The cumulative effect of errors may deprive a party of a fair trial, and in those circumstances, a new trial is necessary." *Boren v. BOC Group, Inc.*, 385 Ill. App. 3d 248, 254 (2008). Generally, "minor improprieties during a lengthy, complex and difficult trial do not warrant reversal where the trial as a whole was fair." *McDonnell v. McPartlin*, 192 Ill. 2d 505, 536 (2000) (citing *Lawson v. G.D. Searle & Co.*, 64 Ill. 2d 543, 558-59 (1976)).

¶ 59                                          B. A&A's Evidentiary Challenges

¶ 60          Having established this court's standard of review, we address each of A&A's evidentiary challenges in turn.

¶ 61                                              1. *Motions* in Limine

¶ 62        A&A first asserts the trial court erroneously denied its motions *in limine* Nos. 40 to 47 as untimely dispositive motions. Additionally, A&A argues in its reply brief the court's alternative rulings failed to provide any further justification, given it was already inclined to deny the motions. Snowstar responds that as a matter of law, the court's denial of a motion *in limine* cannot give rise to an appealable issue. We agree with Snowstar.

¶ 63        "A motion *in limine* is addressed to a court's inherent power to admit or exclude evidence." *People v. Zimmerman*, 2018 IL App (4th) 170695, ¶ 134. The purpose of a motion *in limine* is to bring to the trial court's attention—prior to trial—"evidence that is potentially irrelevant, inadmissible, or prejudicial, and to obtain a pretrial ruling on whether the evidence may be admitted or excluded." *People v. Carter*, 2022 IL App (2d) 210261, ¶ 89. The court's granting or denial of a motion *in limine* is interlocutory in nature. *Arkebauer v. Springfield Clinic*, 2021 IL App (4th) 190697, ¶ 60. Accordingly, as this court explained in *People v. Hancock*, 2014 IL App (4th) 131069, ¶ 123, "[n]o actual prejudice is inflicted by the denial of a motion *in limine*, in itself, because the ruling is always subject to reconsideration during trial." (Internal quotation marks omitted.) Stated differently, "If the ruling is only provisional and made 'in a vacuum' [citation], it is difficult to condemn it as arbitrary and unreasonable." *Id.* Relying on our supreme court's decision in *Simmons v. Garces*, 198 Ill. 2d 541, 569 (2002), this court set forth the effect of the court's denial of a motion *in limine* as follows:

> "The denial of a motion *in limine* does not in itself preserve an objection to disputed evidence that is introduced later at trial. When a motion *in limine* is denied, a contemporaneous objection to the evidence at the time it is offered is required to preserve the issue for review." (Internal quotation marks omitted.) *Hancock*, 2014 IL App (4th) 131069, ¶ 123.

Accordingly, "for appellate purposes, the denial of a motion *in limine* is a nonevent, considering that the motion serves merely as the preview of an objection that must be made during the trial, in response to some particular evidence that the opposing party offers." *Id.* " 'While there is not always a need to repeat the objection each time similar evidence is presented \*\*\*, one must nonetheless object the first time the evidence is introduced.' " *Arkebauer*, 2021 IL App (4th) 190697, ¶ 61 (quoting *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.*, 163 Ill. 2d 498, 502 (1994)).

¶ 64        Here, even assuming A&A is correct the trial court improperly denied its motions *in limine* as untimely, we conclude it does not give rise to an appealable issue because it was a "nonevent." *Hancock*, 2014 IL App (4th) 131069, ¶ 123. The usual procedure to preserve an issue applies regardless of whether the party has initially raised it in the form of a motion *in limine*: the party must contemporaneously object at trial and raise the issue in a timely posttrial motion. *Id.* While A&A contends the court's alternative rulings were "pretextual," given it was already inclined to deny the motions, this did not prevent A&A from raising the issues during trial and in its posttrial motions. Accordingly, we will address the court's denial of A&A's motions *in limine* only to the extent they were individually preserved at trial with a renewed objection and within its posttrial motion.

¶ 65        2. *Previously Disclosed Expert Witnesses*

¶ 66        A&A next contends the trial court abused its discretion when it barred A&A from "calling damages witnesses disclosed by Snowstar," namely, Smith and Hextell.

¶ 67        a. Kerry Smith

¶ 68        A&A argues the trial court abused its discretion when it barred Smith from testifying. The court's basis for initially barring the testimony at trial was it would result in "unfair

prejudice" to Snowstar because of A&A's improper *ex parte* contact. However, in the order denying A&A's motion for a new trial, the court found allowing Smith to testify would have resulted in a violation of the case management order limiting each party's experts to three. A&A maintains even if it violated the case management order, barring Smith's testimony was not an appropriate discovery sanction under Illinois Supreme Court Rule 219(c) (eff. Jul. 1, 2002).

¶ 69 Snowstar counters A&A failed to preserve this issue because it did not make a formal offer of proof as to the testimony Smith would have provided at trial. Alternatively, Snowstar contends the trial court properly excluded Smith's testimony on the grounds (1) it would have violated the case management order and (2) Smith's testimony would have unfairly prejudiced Snowstar and was irrelevant.

¶ 70 We first address Snowstar's claim A&A forfeited this argument on appeal by failing to submit an offer of proof at trial. We agree.

¶ 71 Illinois Rule of Evidence 103 (eff. Oct. 15, 2015) outlines the procedure to preserve a claim of error on an evidentiary ruling for appeal and states, in relevant part, as follows:

> "(3) Civil Cases. In civil trials, even if the court rules before or at trial on the record concerning the admission of evidence, a contemporaneous trial objection or offer of proof must be made to preserve a claim of error for appeal.
>
> ***
>
> (c) Record of Offer and Ruling. The court may add any other or further statement which shows the character of the evidence, the form in which it was offered, the objection made, and the ruling thereon. It may direct the making of an offer in question and answer form." Ill. R. Evid. 103(b), (c) (eff. Oct. 15, 2015).

- 17 -

Accordingly, to preserve a claim of error in a civil jury case such as this one, Rule 103(b) requires (1) a contemporaneous offer of proof be made at trial, even where the court has ruled before trial on the record excluding the evidence, and (2) the claim of error be raised in a posttrial motion. See Ill. R. Evid. 103(b) (eff. Oct. 15, 2015). Because the parties do not dispute A&A filed a timely posttrial motion challenging the trial court's exclusion of Smith's testimony, we focus solely on whether A&A was required to submit an offer of proof.

¶ 72 "An offer of proof is the key to preserving a possible error when the trial court excludes evidence. One purpose of the offer of proof is to disclose the nature of the offered evidence so that a reviewing court can determine whether the exclusion was erroneous and harmful." 3 Robert J. Steigmann & Lori A. Nicholson, Illinois Evidence Manual § 20:17 (4th ed. 2023 Update). Accordingly, "[a]n adequate offer of proof apprises the circuit court of what the offered evidence is or what the expected testimony will be, by whom it will be presented and its purpose." *Kim v. Mercedes-Benz, U.S.A., Inc.*, 353 Ill. App. 3d 444, 451 (2004). When reviewing the adequacy of an offer of proof, this court has found it may fall into one of two categories: formal or informal. See *People v. Pelo*, 404 Ill. App. 3d 839, 875 (2010). A "formal" offer of proof occurs "wherein counsel offers the proposed evidence or testimony by placing a witness on the stand, outside the jury's presence, and asking him questions to elicit with particularity what the witness would testify to if permitted to do so." *Id.* An "informal" offer of proof occurs where counsel "request[s] permission from the trial court to make representations regarding the proffered testimony." *Id.* It is the duty of counsel to develop a record showing the trial court was satisfied it understood the nature of the evidence the party sought to admit. *Id.* at 876.

¶ 73 Here, A&A has forfeited its claim the trial court erroneously dismissed Smith as a witness because it failed to make any attempt at an offer of proof—either formal or informal.

Despite the fact Smith was on the witness stand and prepared to testify, counsel for A&A did not (1) request to question him regarding his planned testimony or (2) explain to the court in detail what the testimony would be. Citing *Torres v. Midwest Development Co.*, 383 Ill. App. 3d 20, 26 (2008), A&A claims an offer of proof was not required because the record showed the court "clearly understood" the nature and character of the evidence it sought to introduce. We disagree. An offer of proof is a critical procedure to preserve a purported erroneous exclusion of evidence. At no point did the court state on the record it understood the specific testimony A&A sought to elicit from Smith. Although the court had Smith's report before it, A&A did not develop a record to establish how Smith arrived at the opinions contained in his report. Without any indication in the record the court understood what testimony A&A sought to introduce through Smith, we decline to excuse A&A's failure to preserve the issue by making an offer of proof.

¶ 74 Moreover, even if this court excused A&A's forfeiture, we would not find the trial court abused its discretion when it dismissed Smith as a witness because allowing his expert testimony would have violated the trial court's most recent case management order. Under Illinois Supreme Court Rule 218(c) (eff. Oct. 1, 2021), the trial court is required to enter a case management order following a conference with the parties, specifying the issues for trial and providing dates for the disclosure of witnesses, which controls the subsequent course of the action unless modified. Under Rule 218(a), the court may, in its discretion, impose limits on "the area of expertise and the number of expert witnesses who may be called." Ill. S. Ct. R. 218(a) (eff. Oct. 1, 2021). Accordingly, the court may, in its discretion, bar a witness from testifying where necessary to conform to its own order limiting the number of expert witnesses. See, *e.g.*, *Knight v. Haydary*, 223 Ill. App. 3d 564, 575 (1992) ("Following the plain language of Rule 218, the court could justifiably bar [the expert witness] from testifying because it was acting in accordance with its own

order which served to limit the number of expert witnesses."). A&A agrees the court's most recent case management order—entered February 3, 2022, after Snowstar had retained new counsel—limited expert witnesses to three per side and that it did not disclose Smith as a witness in its third supplemental Rule 213(f)(3) disclosures, filed August 22, 2022. Although A&A disclosed any witness identified by Snowstar in its April 2018 interrogatory responses, the plain language of Rule 218 indicates the *most recent* case management order controls. See Ill. S. Ct. R. 218(c) (eff. Oct. 1, 2021). Neither party disclosed Smith as an expert following the February 2022 case management order. Furthermore, although Snowstar did not "officially" abandon Smith as a witness, Snowstar moved to extend the deadline to disclose expert witnesses because Smith had left the employer through which Snowstar had retained him, and Smith informed Snowstar he was no longer able to provide his expert testimony. Accordingly, Snowstar ostensibly believed Smith was no longer available and would not be testifying at trial. In the February 2022 case management order, A&A had already disclosed three experts. Allowing A&A to present a fourth expert witness would have been unfairly prejudicial to Snowstar, who only presented three experts. See Ill. R. Evid. 403 (eff. Jan. 1, 2011) ("[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.").

¶ 75                                      b. Kevin Hextell

¶ 76        A&A next contends the trial court abused its discretion when it barred Kevin Hextell from offering evidence of Snowstar's damages. Snowstar responds Hextell's damages testimony was properly barred because it would have required mentioning liability insurance, which the court, during motions *in limine*, had previously barred, and would have constituted improper expert opinion testimony. We agree with Snowstar.

¶ 77        "It is well settled that it is improper to inform the jury, either directly or indirectly, that the defendant is, or is not, insured against liability on a judgment that might be entered against him in a negligence action." (Internal quotation marks omitted.) *Koonce v. Pacilio*, 307 Ill. App. 3d 449, 455-56 (1999). "Evidence of insurance or lack of it is irrelevant to the issue of negligence, yet may influence a jury in determining in which party's favor to render a verdict and in determining the size of the verdict." *Id.* at 456.

¶ 78        Here, the trial court did not abuse its discretion when it barred Hextell from testifying on the issue of damages because it would have contravened its previous ruling barring the mentioning of insurance. Prior to trial, the court granted A&A's motion *in limine* No. 5, which sought to bar "any discussion of the parties' insurance status" on the grounds it "could invite jurors to return a large verdict in favor of [Snowstar], believing that such a result would not harm [A&A] financially." Although the court initially approved of allowing Hextell to testify for the purpose of introducing photographs he took of the lodge following the fire, A&A then attempted to introduce a repair estimate prepared by Hextell using software called Xactimate. According to Hextell's estimate, repairs to the lodge would cost $160,551.97. The foundation for such a line of questioning would have necessitated mentioning Hextell's employment as an insurance adjustor, which provided him with the occasion to prepare the estimate and access to the software necessary to do so. The court's decision to bar this line of questioning was not arbitrary or unreasonable because it would have been unfairly prejudicial to Snowstar to bar discussion of insurance when detrimental to A&A but allow the testimony when favorable to A&A. See Ill. R. Evid. 403 (eff. Jan. 1, 2011) ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice ***.").

¶ 79    Moreover, as the trial court noted in its order, allowing Hextell's testimony on the repair estimate would have constituted improper expert opinion testimony. As stated above, the court has discretion, under Rule 218(a), to limit the number of expert witnesses at trial. Ill. S. Ct. R. 218(a) (eff. Oct. 1, 2021). Although A&A claims Snowstar disclosed Hextell as an independent expert witness in April 2018, once again—as mentioned above—neither party disclosed Hextell as an expert witness following the most recent case management order, which was controlling. Ill. S. Ct. R. 218(c) (eff. Oct. 1, 2021). Accordingly, the court properly limited the scope of Hextell's testimony to that of a percipient witness—which necessarily precluded testimony requiring specialized knowledge, such as the cost to repair damages to the lodge calculated using insurance industry software. See Ill. R. Evid. 701 (eff. Jan. 1, 2011) ("If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those *** not based on scientific, technical, or other specialized knowledge ***."). Again, it was not arbitrary or unreasonable for the court to conclude allowing A&A to present an additional, undisclosed expert witness would have been unfairly prejudicial to Snowstar, who only presented three experts.

¶ 80    3. *Snowstar Owners' Lay Opinion Testimony*

¶ 81    A&A next argues the trial court erroneously allowed, over its objection, undisclosed opinion testimony from Bowman and Dr. Rexroth, who each had ownership interests in Snowstar. Snowstar responds A&A failed to preserve this issue on appeal because it failed to object on that basis at trial, where it instead challenged the testimony on the grounds of lack of foundation. Alternatively, Snowstar responds it gave adequate notice Bowman and Dr. Rexroth would provide lay opinion testimony on the value of the business prior to the fire as well as the resulting damages.

¶ 82    a. Forfeiture

¶ 83        "The law in Illinois is well established that, to preserve any alleged error for appeal, a party must object specifically both at trial and in a posttrial motion." *La Salle Bank, N.A. v. C/HCA Development Corp.*, 384 Ill. App. 3d 806, 826 (2008). "Unless they are obvious from the record, the grounds for an objection must be *specifically* stated in order to preserve an issue for appeal." (Emphasis added.) *In re Commitment of Hooker*, 2012 IL App (2d) 101007, ¶ 53. Stated differently, "the failure to properly object to allegedly improper testimony [forfeits] the right to raise those matters on appeal." *Hall v. National Freight, Inc.*, 264 Ill. App. 3d 412, 425 (1994).

¶ 84        Here, we conclude A&A properly preserved this issue with respect to Bowman when, immediately prior to Bowman's testimony, it renewed its motion *in limine* No. 42, which sought to bar testimony regarding Snowstar's alleged damages to real and personal property on the grounds he provided no opinion evidence or the fair market value of real estate immediately before the occurrence or immediately after repairs. Although the stated grounds for A&A's objections *during* Bowman's testimony were "lack of foundation," we conclude A&A's renewal of its motion *in limine* immediately prior to Bowman's testimony, which was based on a failure to disclose, was sufficient to preserve this issue on appeal. See, *e.g.*, *Morrison v. Reckamp*, 294 Ill. App. 3d 1015, 1019-20 (1998) (concluding personal injury plaintiff preserved claim expert accident reconstruction testimony was not admissible by renewing motion *in limine* that sought to bar expert's opinion testimony, even where other objections raised differed from the grounds in the motion *in limine*).

¶ 85        However, we conclude A&A has forfeited this argument with respect to Dr. Rexroth. A&A did not renew its motion *in limine* No. 43 during trial, which sought to exclude testimony regarding the value of the lodge and Snowstar's damages on the grounds Snowstar failed to disclose Dr. Rexroth would provide opinion testimony on these subjects. Instead, immediately

after Snowstar's counsel indicated during Dr. Rexroth's direct examination it would be asking about the valuation of the lodge, A&A asked for a standing objection to "lack of foundation"— not Snowstar's failure to disclose Dr. Rexroth's lay opinion testimony on this subject. Accordingly, we conclude A&A failed to preserve this issue as to Dr. Rexroth when it failed to specifically object on the grounds it now seeks to challenge on appeal, and we therefore decline to address it.

¶ 86                                    b. Rule 213(f) Disclosure

¶ 87           Having concluded A&A preserved its objection to Bowman's opinion testimony based on Snowstar's failure to disclose, we turn to the merits.

¶ 88           Under Illinois Supreme Court Rule 213(f)(1) (eff. Jan. 1, 2018), upon written interrogatory, a party must furnish the names of its witnesses to the opposing party, along with the following information: "For each lay witness, the party must identify the *subjects* on which the witness will testify. An answer is sufficient if it gives reasonable notice of the testimony, taking into account the limitations on the party's knowledge of the facts known by and opinions held by the witness." (Emphasis added.) The committee comments to Rule 213 indicate, for lay witnesses, "the party must identify the 'subjects' of testimony—meaning the topics, rather than a summary." Ill. S. Ct. R. 213, Committee Comments (adopted Mar. 28, 2002). Furthermore, "[a]n answer must describe the subjects sufficiently to give 'reasonable notice' of the testimony, enabling the opposing attorney to decide whether to depose the witness, and on what topics." *Id.* Finally, "The information disclosed in answer to a Rule 213(f) interrogatory, or in a discovery deposition, limits the testimony that can be given by a witness on direct examination at trial." Ill. S. Ct. R. 213(g) (eff. Jan. 1, 2018).

¶ 89        Here, the trial court did not abuse its discretion when it allowed Bowman to testify on the value of Snowstar's lodge and personal property despite a lack of pretrial disclosure because Snowstar provided adequate notice to A&A Bowman would testify on these topics. In its third supplemental answer to A&A's interrogatories, filed April 20, 2022, and in response to A&A's request to disclose its Rule 213(f)(1) witnesses, Snowstar listed Bowman and included the following topics below his name: his ownership of and employment with Snowstar, his communications concerning the fire, Snowstar's loss of customers due to the fire and Snowstar's related damages, Snowstar's property damage, and other subject matters concerning liability and damages in support of the allegations in the complaint. The record shows A&A deposed Bowman for approximately four and a half hours in June 2022. Even assuming *arguendo* A&A is correct Bowman did not provide his opinions on the value of Snowstar's lodge and personal property during his deposition, Snowstar notified A&A of its intent to elicit such testimony in its answer to A&A's interrogatory when it listed "[h]is ownership of and employment with Snowstar," "Snowstar's property damage," and "other subject matters concerning *** damages in support of the allegations in the complaint" as Bowman's testimony topics. Although A&A claims this list is insufficiently vague in violation of Rule 213(f)(1), as an owner of Snowstar, Bowman's opinion on the value of Snowstar's real and personal property is reasonably encompassed within these topics to have afforded A&A notice of this potential testimony. Moreover, Snowstar's disclosure occurred prior to the deposition, and A&A had an opportunity to explore those topics at the deposition.

¶ 90        A&A claims this case is similar to *Kim*, 353 Ill. App. 3d at 446. In *Kim*, the plaintiff filed a complaint alleging, because of ineffective repair attempts made by the defendant, his vehicle could not be utilized for personal, family, and household use as intended by plaintiff at the time of

acquisition. *Id.* Prior to trial, the plaintiff sent a letter to defense counsel indicating he intended to testify at trial "about the matters alleged in Plaintiff's complaint." (Internal quotation marks omitted.) *Id.* at 447. During motions *in limine*, the trial court granted the defendant's motion to bar the plaintiff from calling any fact or opinion witness not properly disclosed pursuant to Rule 213. *Id.* During the plaintiff's testimony, the defendant objected to a line of questioning regarding what plaintiff would have agreed to pay for the vehicle had he been aware of its mechanical problems. *Id.* at 448. The court sustained the defendant's objection, concluding that no foundation was laid demonstrating the plaintiff was a competent witness to testify as to the diminished value of the vehicle and that plaintiff's testimony had not been disclosed. *Id.* The court ultimately granted the defendant's motion for a directed verdict. *Id.* at 451. On appeal, the plaintiff argued the court erred when it barred him from testifying regarding the diminished value of his vehicle, asserting his Rule 213(f) disclosure was sufficient to apprise the defendant of the diminished value testimony. The First District disagreed and affirmed the trial court's judgment, concluding the plaintiff's "notice that he would testify as to matters set forth in his complaint is a generalized statement akin to the committee comments' example noting that merely testifying about an 'accident' is improper disclosure," and his "generalized statement as to his proposed testimony created unfair surprise with respect to the attempt to introduce testimony as to the diminished value of the [vehicle]." *Id.* at 454.

¶ 91        This case is distinguishable from *Kim*. Here, Snowstar's Rule 213(f) disclosure with respect to Bowman went substantially beyond merely stating he would testify "about the matters alleged in Plaintiff's complaint." (Internal quotation marks omitted.) *Id.* at 447. As noted above, Snowstar's disclosure included five distinct topics, each of which specifically identified the type of information Bowman possessed and on which he intended to testify at trial. Snowstar's

disclosure Bowman intended to testify regarding his ownership of Snowstar and damages to Snowstar's property following the fire was sufficient to apprise A&A he would provide lay opinion testimony on the value of that property. Accordingly, the trial court did not abuse its discretion when it permitted Bowman's testimony on these subjects.

¶ 92                             4. *Snowstar's Damages Experts*

¶ 93          A&A next argues the trial court abused its discretion when it permitted Snowstar's experts, Engel and Crotty, to testify on the issue of damages. Snowstar contends the court properly admitted Engel's and Crotty's damages testimony and no abuse of discretion occurred.

¶ 94          Specifically, A&A asserts the trial court erred when it admitted Engel's expert opinion testimony on the issue of damages because (1) he was not a qualified financial expert to give proper "business loss" opinions where he was neither a certified public accountant, forensic accountant, certified business consultant, nor certified business appraiser; (2) his business loss opinions were speculative as to "skier" customer behavior; and (3) his opinions as to fair market values as to the subject real property and personal property value losses were both inadmissible as speculative and as lacking proper foundation. Snowstar responds A&A waived any objection to Engel's damages testimony by stipulating to the admission of Engel's expert report, *i.e.*, defendant's exhibit No. 59. In turn, A&A replies the admission of Engel's report was a mere "housekeeping" matter and did not waive an objection to the foundation of the report's contents.

¶ 95          "Waiver arises from an affirmative act, is consensual, and consists of an intentional relinquishment of a known right." *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 326 (2004). Waiver "may occur either through an express statement or be implied through the conduct of the waiving party." *Norman v. U.S. Bank National Ass'n*, 2020 IL App (1st) 190765, ¶ 23. Accordingly, "where a party himself introduces or elicits certain evidence, he cannot later

complain." *Gillespie v. Chrysler Motors Corp.*, 135 Ill. 2d 363, 374 (1990). Stated differently, "[a] party cannot stipulate to the introduction of evidence and then complain on appeal its introduction was error." *Redlin v. Village of Hanover Park*, 278 Ill. App. 3d 183, 192 (1996).

¶ 96 It is well settled that "[t]he admission of an expert's testimony requires the proponent to lay an adequate foundation establishing that the information upon which the expert bases his opinion is reliable." *Martin v. Sally*, 341 Ill. App. 3d 308, 315 (2003). "Foundation" is defined as "evidence or testimony that establishes the admissibility of other evidence." Black's Law Dictionary (11th ed. 2019). Accordingly, when a party affirmatively agrees to the admission of expert opinion evidence, he waives the necessity of proving the requisite foundation for the expert's opinion. See, *e.g.*, *People v. Bush*, 214 Ill. 2d 318, 333 (2005).

¶ 97 Here, we agree with the trial court A&A waived any objection to the foundation for Engel's damages opinion by agreeing to the admission of his report. Prior to plaintiff's case-in-chief, A&A marked Engel's report as defendant's exhibit No. 59 and informed the court it had no objection to its admission. By affirmatively agreeing to admit the report, A&A waived any objection to the report's admissibility, including the necessity for Snowstar to prove the requisite foundation for Engel's damages opinion. All of Engel's testimony regarding Snowstar's damages was contained in his report and therefore required no further foundation where the written report had already been admitted. See, *e.g.*, *Cunningham v. Millers General Insurance Co.*, 227 Ill. App. 3d 201, 206-07 (1992) ("Where a party objects to certain evidence but fails to object to similar evidence admitted by the trial court, the party waives any claim that the evidence objected to was erroneously admitted."). In sum, A&A was precluded from challenging Engel's testimony about the contents of his report after acquiescing to its admission. Furthermore, A&A cites no authority for its proposition that a party may agree to the admission of an exhibit for "housekeeping"

purposes, only to later challenge the foundation of its contents. Accordingly, the court did not abuse its discretion when it permitted Engel to testify regarding his damages opinions as contained within his report.

¶ 98       A&A also claims the court abused its discretion when it allowed Crotty to testify regarding Snowstar's business losses because his testimony relied upon Engel's report. Because we conclude A&A waived any objection to Engel's opinion testimony when it agreed to admit his report, we similarly conclude A&A waived any objection to Crotty's reliance on said report. See *id.*

¶ 99                     5. *Negligence Evidence*

¶ 100       A&A's final arguments challenge the trial court's admission of certain evidence on the issue of A&A's alleged negligence, specifically (1) Woodall's standard of care testimony, (2) A&A's lack of licenses, and (3) Snowstar's cross-examination of Pokrajac regarding the ice machine's service manual. We address each issue in turn.

¶ 101                     a. Woodall's Standard of Care Testimony

¶ 102       A&A argues the trial court abused its discretion when it permitted Woodall to provide standard of care opinions and testimony regarding A&A's service technicians because he lacked the requisite expertise to offer such opinions. Specifically, A&A contends although Woodall was an electrical engineer, he had no experience in the field as a service technician. Therefore, A&A's argument continues, Woodall was not qualified to opine A&A's service technicians could check for whether electricity was passing through an improperly assembled electrical component and generating heat by manually grabbing the machine's plug after the test of three or four ice drops to feel if the plug was hot. Snowstar responds Woodall's standard of care testimony was well within his professional expertise as an electrical engineer.

- 29 -

¶ 103 "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Ill. R. Evid. 702 (eff. Jan. 1, 2011). " 'The test of competency of an expert witness is whether he discloses sufficient knowledge of his subject matter to entitle his opinion to go to the jury.' " *Unitrin Preferred Insurance Co. v. Dobra*, 2013 IL App (1st) 121364, ¶ 20 (quoting *Gibson v. Healy Brothers & Co.*, 109 Ill. App. 2d 342, 353 (1969)). Furthermore, a qualified expert may "testify regarding a standard of care which is beyond the knowledge of the average person." *Sohaey v. Van Cura*, 240 Ill. App. 3d 266, 267 (1992).

¶ 104 Here, the trial court did not abuse its discretion when it permitted Woodall to testify regarding the standard of care for a service technician because it was within his area of expertise as an electrical engineer. At trial, Woodall testified he had held a certification as an electrician for nearly 20 years and was familiar with the process of assembling a Hubbell-brand plug and SO extension cord as would have been completed by A&A's service technicians. Woodall also testified he had worked with "similar" equipment and employed the standard of care of running a machine through several cycles and then manually touching the plug to feel if it was warm to check if it was generating heat. Even in the absence of direct experience in the field as an ice machine service technician, Woodall's testimony showed sufficient knowledge and background in electrical engineering and assembling the same type of cable and plug combination to provide an adequate foundation for his standard of care opinion testimony. Accordingly, the court's decision to allow this testimony was not arbitrary or unreasonable.

¶ 105 b. Lack of Licenses

¶ 106    A&A further argues the trial court abused its discretion when it allowed Snowstar to introduce evidence A&A lacked licenses to hook up power cords during cross-examination of Pokrajac and Wilcox. Snowstar responds A&A failed to preserve this issue when it did not contemporaneously object at trial or, alternatively, A&A invited any error when it pursued the same line of questioning during Woodall's cross-examination.

¶ 107    As provided above, "[t]he law in Illinois is well established that, to preserve any alleged error for appeal, a party must object specifically both at trial and in a posttrial motion." *La Salle Bank, N.A.*, 384 Ill. App. 3d at 826. Because the denial of a motion *in limine* does not preserve an issue for review, " 'a contemporaneous objection to the evidence *at the time it is offered* is required to preserve the issue for review.' " (Emphasis added.) *Arkebauer v. Springfield Clinic*, 2021 IL App (4th) 190697, ¶¶ 60-61 (quoting *Simmons*, 198 Ill. 2d at 569). " 'While there is not always a need to repeat the objection each time similar evidence is presented \*\*\*, one must nonetheless object the first time the evidence is introduced.' " *Id.* ¶ 61 (quoting *Illinois State Toll Highway Authority*, 163 Ill. 2d at 502). Furthermore, " '[A] party who "opens the door" on a particular subject is barred from objecting to questioning based upon the same subject.' " *People v. Tolbert*, 323 Ill. App. 3d 793, 805 (2001) (quoting *People v. Pursley*, 284 Ill. App. 3d 597, 604 (1996)). "Hence, a defendant cannot complain about a line of inquiry that he has invited." *Id.*

¶ 108    Here, A&A failed to preserve any contention of error regarding lack of licensure during the cross-examination of Pokrajac and Wilcox when it failed to contemporaneously object at trial. The record shows A&A did not assert any objection during Snowstar's cross-examination of Pokrajac and Wilcox during this line of questioning. Furthermore, although A&A filed a motion *in limine* seeking to exclude such testimony, the court reserved its ruling for trial. Then, during Woodall's cross-examination, A&A questioned him regarding whether A&A was required to

possess any licenses to hook up a power cord, to which Woodall responded it was not. During the sidebar that followed, the trial court agreed A&A "opened the door" to this line of questioning when it asked the aforementioned question. Despite A&A's contentions in its brief, the court's ruling was not a command to A&A that it could not lodge its objection when Snowstar elicited this evidence later in the trial. Not only did A&A forfeit this issue by failing to object during Pokrajac's and Wilcox's cross-examinations, it invited any error when it pursued the line of questioning during Woodall's cross-examination. See *id.* Consequently, A&A was precluded from simultaneously asserting that (1) Woodall's admission A&A was not required to have a license is relevant *and* (2) the fact it does not have any such license is *not* relevant. Accordingly, we conclude the court did not abuse its discretion when it allowed Snowstar to cross-examine Pokrajac and Wilcox on A&A's lack of licensure when it also permitted A&A to elicit Woodall's admission A&A was not required to have such licenses.

¶ 109                                    c. Service Manual

¶ 110         A&A also argues the trial court abused its discretion when it allowed Snowstar to cross-examine Pokrajac regarding plaintiff's exhibit No. 65, which was the service manual titled "Manitowoc Parts & Service Communicator, Subject: Manitowoc Data Plate—Serial Number Change and Manufactured Date Code Location" and "Manitowoc Ice Machine Serial Numbers, (dated March 20, 2015)." Specifically, A&A contends (1) plaintiff's exhibit No. 65 had no relevance to the machine at issue and should have been barred pursuant Illinois Rule of Evidence 402 (eff. Jan. 1, 2011) and (2) its admission only served to confuse the jury about the date the ice machine was manufactured to bring into question when the power cord and plug would have been installed, in violation of Illinois Rule of Evidence 403 (eff. Jan. 1, 2011).

¶ 111　　　　To be admissible, evidence must meet the threshold requirement of relevance. *People v. Pinkett*, 2023 IL 127223, ¶ 30. Illinois Rule of Evidence 401 (eff. Jan. 1, 2011) defines "relevant" evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

¶ 112　　　　As a defense, A&A asserted Snowstar's strict product liability claim was barred by the statute of repose set forth in section 13-213(b) of the Code of Civil Procedure (735 ILCS 5/13-213(b) (West 2022)). Section 13-213(b) provides, in relevant part, as follows:

> "[N]o product liability action based on any theory or doctrine shall be commenced except within the applicable limitations period and, in any event, within 12 years from the date of first sale, lease or delivery of possession by a seller or 10 years from the date of first sale, lease or delivery of possession to its initial user, consumer, or other non-seller, whichever period expires earlier, of any product unit that is claimed to have injured or damaged the plaintiff, unless the defendant expressly has warranted or promised the product for a longer period and the action is brought within that period." *Id.*

¶ 113　　　　Here, the service manual was relevant for purposes of Rule 401 because it tended to negate Pokrajac's testimony the ice machine was manufactured and purchased in 1995, which in turn undermined A&A's statute of repose defense. The service manual established in 2006, Manitowoc changed its serial number designations so they no longer included the manufacturing date information in a two-digit year, two-digit month sequence, and instead listed such information

separately from the serial number. Logically, if a Manitowoc ice machine manufactured prior to 2006 followed the previous format, the second set of two digits would not exceed the number 12—*i.e.*, the number corresponding to the calendar month of December. Because the second set of two digits in the serial number at issue contained the number "14," it could not have followed the serial number designation asserted by A&A. As the trial court noted in its written posttrial order, this was crucial to A&A's statute of repose defense because the manufacture and lease dates, and the subsequent installation of the plug and cord, could be determinative of whether Snowstar asserted its claim within the requisite 10- or 12-year period. Accordingly, the service manual was relevant for purposes of Rule 401.

¶ 114　　　　Furthermore, even assuming *arguendo* the probative value of the manual was substantially outweighed by the risk of confusing the jury under Rule 403, the trial court correctly found this error would not entitle A&A to a new trial because the jury did not find it liable on a strict product liability theory. Instead, the jury's verdict indicated it found for Snowstar on a simple negligence theory, as evidenced by its reduction of damages due to contributory negligence, and to which A&A's statute of repose defense did not apply because it was not based in product liability. See *id.* (stating its applicability to product liability actions); see also *Blue v. Environmental Engineering, Inc.*, 215 Ill. 2d 78, 95-97 (2005) (explaining the rarity of products liability claims sounding in negligence rather than strict liability).

¶ 115　　　　Further, A&A claims the record does not support a contention the jury awarded damages on the negligence theory because "[t]he jury was not given a special interrogatory, nor was it polled, and the verdict form did not differentiate." However, A&A is precluded from complaining about the lack of interrogatories or differentiation in the verdict form because it specifically objected to Snowstar's proposal to do so. See *Bruntjen v. Bethalto Pizza, LLC*, 2014

IL App (5th) 120245, ¶ 152 ("[T]he doctrine of invited error prohibits a party from complaining of an error on appeal which that party induced the court to make or to which that party consented." (Internal quotation marks omitted.)). Moreover, the application of contributory negligence would have been inconsistent with a strict products liability verdict because our supreme court has held that doctrine is not a defense to strict products liability claims. See *McCracken v. Westinghouse Air Brake Co.*, 103 Ill. App. 3d 26, 28 (1981) ("It is well-settled in Illinois that contributory negligence is not an available defense in a strict products liability action \*\*\*.").

¶ 116    In sum, the trial court did not abuse its discretion when it admitted the service manual, and even assuming error, such error would not entitle A&A to a new trial because A&A invited the error.

¶ 117                6. *Cross-Examination of Gary Hong*

¶ 118    Finally, A&A argues the trial court abused its discretion when it permitted Snowstar to cross-examine A&A's expert, Gary Hong, regarding hearsay statements from Anthony Fairchild, who did not testify at trial. Snowstar responds its cross-examination of Hong was permissible for impeachment purposes where A&A elicited testimony from Hong on direct examination that he reviewed Fairchild's deposition in preparation for this case. We agree with Snowstar.

¶ 119    Under Illinois Rule of Evidence 703 (eff. Jan. 1, 2011), "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing." The Advisory Committee comments to Federal Rule of Evidence Rule 703, upon which the Illinois equivalent is based, identify three possible sources from which an expert may derive such facts or data: (1) firsthand observation, (2) presentation at trial (*e.g.*, asking the expert hypothetical questions or observation of other

witnesses), and (3) presentation of data or facts to the expert outside of court and other than by his own perception. Fed. R. Evid. 703 (Notes of Advisory Committee on Proposed Rules). With respect to the third source, the Advisory Committee provides the example of a physician who, in his own practice, "bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays." *Id.*

¶ 120        Because an expert witness may base his opinion on a variety of facts and data, he may properly disclose, on direct examination, the underlying source of those facts and data—including out-of-court witness statements—not for the truth of the matter asserted, but instead for the limited purpose of explaining the basis for his opinion. See *People v. Anderson*, 113 Ill. 2d 1, 11-12 (1986). Conversely, Illinois Rule of Evidence 705 (eff. Jan. 1, 2011) provides, "The expert may testify in terms of opinion or inference and give reasons therefor without first testifying to the underlying facts or data," but "may *** be required to disclose the underlying facts or data on cross-examination." In turn, Illinois Rule of Evidence 611(b) (eff. Oct. 15, 2015), governs the scope of cross-examination. Specifically, "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness, which include matters within the knowledge of the witness that explain, qualify, discredit or destroy the witness's direct testimony." *Id.* Accordingly, if an expert testifies he relied on or reviewed certain documents to form his opinion, the expert may thereafter be cross-examined on the contents of those documents. See, *e.g.*, *Jager v. Libretti*, 273 Ill. App. 3d 960, 962 (1995) ("It is plain that if [plaintiff's medical expert] relied on the *** emergency room records or the ambulance report in forming his opinion, defendant could have properly cross-examined [him] regarding their contents."). A party may even cross-examine an expert on materials which he testifies he has

reviewed but denies he relied upon. *Iaccino v. Anderson*, 406 Ill. App. 3d 397, 408 (2010); see *Piano v. Davison*, 157 Ill. App. 3d 649 (1987) (concluding defendants properly cross-examined plaintiff's expert physician regarding medical records he reviewed but did not rely upon).

¶ 121 Here, the trial court did not abuse its discretion when it allowed Snowstar to cross-examine Hong about Fairchild's statements because A&A elicited testimony from Hong that he reviewed Fairchild's deposition in preparation for the case, and specifically asked Hong about whether employees moved the ice machine to paint—information which derived directly from Fairchild's deposition testimony. Reminiscent of the example of the physician in the Advisory Committee comments to Rule 703 (Fed. R. Evid. 703 (Notes of Advisory Committee on Proposed Rules)), who relies upon the "statements by patients and relatives" to form a diagnosis, Hong disclosed, at A&A's invitation, the deposition testimony he reviewed in forming an opinion on the cause of the fire in this case. Although A&A's counsel did not identify Fairchild by name, Hong brought Fairchild's statements within the scope of cross-examination when he acknowledged on direct examination he reviewed the deposition testimony. See Ill. R. Evid. 705 (eff. Jan. 1, 2011); Ill. R. Evid. 611(b) (eff. Oct. 15, 2015). It does not matter whether Hong assigned any weight to Fairchild's deposition testimony; the fact he reviewed it was sufficient to bring its contents within the scope of cross-examination. Further, Hong testified the purpose of reviewing the depositions was to "gather what [he] think[s] is pertinent" and "match that up with what they say with the physical evidence to see if it is consistent with what the people are saying." Because A&A elicited testimony regarding moving the ice machine to paint, which derived from Fairchild's testimony, it was not arbitrary or unreasonable for the court to permit Snowstar to cross-examine Hong regarding his notes pertaining to Fairchild's other statements about the ice machine, which expanded upon the basis for his opinions on the origin of the fire. If A&A did not want to open the

door to any discussion of Fairchild's deposition testimony or for him to rely upon it, it should not have provided it to Hong in preparation for the case.

¶ 122                    7. *Cumulative Effect of Errors*

¶ 123        In conclusion, this court finds no abuses of discretion with respect to any of A&A's challenges to the evidentiary issues raised in this appeal. In the absence of any errors, we find no "cumulative effect" that deprived A&A of a fair trial and would justify ordering a new trial. See *Boren*, 385 Ill. App. 3d at 254. Accordingly, we affirm the trial court's judgment.

¶ 124        We further commend the trial court for its explanations of its rulings, both orally and written, which facilitated our review of the issues raised in this case on appeal. We acknowledge and appreciate the trial court's effort to provide us with a sufficient record for review.

¶ 125                    III. CONCLUSION

¶ 126        For the reasons stated, we affirm the trial court's judgment.

¶ 127        Affirmed.

*Snowstar Corp. v. A&A Air Conditioning & Refrigeration Service, Inc.*,
2024 IL App (4th) 230757

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Rock Island County, No. 17-L-143; the Hon. James G. Conway Jr., Judge, presiding. |
| **Attorneys for Appellant:** | Steven R. Johnson, Stacy Shelly, and Scott A. Schoen, of Langhenry, Gillen, Lundquist & Johnson, LLC, of Princeton, for appellant. |
| **Attorneys for Appellee:** | Jeffrey C. McDaniel, of Brooks Law Firm P.C., of Rock Island, and Matthew L. Preston, Brad J. Brady, Ann C. Gronlund, and Jared T. Favero, of Brady Preston Gronlund PC, of Cedar Rapids, Iowa, for appellee. |